IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| GLM FARMS, MID-PLAINS FARMS, INC., BARBARA MATHIS & WARREN D. MATHIS ESTATE TRUST, WEST PLAINS FARMS, and M&G MATHIS PARTNERSHIP,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>FEDERAL CROP INSURANCE CORPORATION, and RISK MANAGEMENT AGENCY,<br><br>　　　　　　Defendants. | Civil Action No. _____ |

## COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY RELIEF

Plaintiffs, GLM Farms, Mid-Plains Farms, Inc., West Plains Farms, and Barbara Mathis & Warren D. Mathis Estate Trust, and M&G Partnership (collectively, "**Plaintiffs**"), state as follows for their Complaint for Judicial Review and Declaratory Relief against Defendants, the Federal Crop Insurance Corporation ("**FCIC**") and Risk Management Agency ("**RMA**").

### Parties

1.　　Plaintiffs are individuals, trusts, partnerships, and legal entities who farm in West Texas (Hale and Floyd Counties).

2.　　Plaintiffs' farms are located in counties served by the Lubbock Division of the United States District Court for the Northern District of Texas.

3.　　FCIC is a wholly owned government corporation within the United States Department of Agriculture ("**USDA**").

4.　　RMA is a subagency of USDA.

1

**Jurisdiction and Venue**

5. This Court has jurisdiction pursuant to 7 U.S.C. § 1508 and 5 U.S.C. §§ 701-06. Venue is proper pursuant to 7 U.S.C. § 1508(j)(2) and 28 U.S.C. § 1391.

**Background Information**

6. The sole issue presented in this case is the proper interpretation of Section 6(k)(2) of the 2019 Rainfall and Vegetation Index Plan Common Policy (the "**RI/VI Policy**").

7. The RI/VI Policy is authorized and governed by the Federal Crop Insurance Act (the "**FCIA**"), 7 U.S.C. §§ 1501-1531, and attendant regulations published in Title 7, Chapter IV of the Code of Federal Regulations.

8. Under the FCIA, federal crop insurance policies are offered through private Approved Insurance Providers ("**AIPs**")—such as Diversified Crop Insurance Services n/k/a AgriSompo North America, Inc. ("**AgriSompo**")—and reinsured and regulated by FCIC. FCIC, in turn, is operated and managed by RMA. RMA promulgates regulations, crop insurance policies, handbooks, and guidance documents in accordance with the FCIA.

9. Plaintiffs all planted cotton crops in the spring of 2019 (the "**2019 Cotton Crops**").

10. Plaintiffs insured the 2019 Cotton Crops through multiple peril crop insurance policies (the "**2019 Cotton Policies**") purchased from AgriSompo.

11. After the 2019 Cotton Crops failed due to adverse weather conditions, Plaintiffs planted annual forage crops in the summer of 2019 (the "**2019 Annual Forage Crops**") on the same acreage on which the failed 2019 Cotton Crops had been planted.

12. Plaintiffs insured the 2019 Annual Forage Crops through annual forage crop insurance policies purchased from Hudson Insurance Company (the **"2019 Annual Forage Policies"**).

13. Plaintiffs planted the 2019 Annual Forage Crops and purchased the 2019 Annual Forage Policies because—according to West Texas agricultural experts—planting a summer forage crop after a failed cotton crop is a recognized, recommended, and profitable practice.

14. Plaintiffs also planted the 2019 Annual Forage Crops and purchased the 2019 Annual Forage Policies in reliance on prior guidance from RMA and AIPs that planting annual forage crops after failed spring cotton crops would satisfy Section 6(k)(2) of the RI/VI Policy and allow an insured to receive a full indemnity for both crops.

15. Section 6(k) of the RI/VI Policy provides that:

> Notwithstanding section 6(i)(2)(ii), you may receive a full indemnity for a first insured crop when a second crop, regardless of whether or not the second crop is insured or sustains an insurable loss, if each of the following conditions is met:
>
> (1) It is a practice that is generally recognized by agricultural experts or organic agricultural experts for the area to plant two or more crops for harvest in the same crop year;
>
> (2) The second crop is customarily planted after the first insured crop for harvest on the same acreage in the same crop year in the area;
>
> (3) Additional coverage offered under the authority of the Act is available in the county on the two or more crops that are double cropped; and
>
> (4) You provide records acceptable to us of acreage and production that show you have double cropped acreage in at least two of the last four crop years in which the first insured crop was planted, or that show the applicable acreage was double cropped in at least two of the last four crop years in which the first insured crop was grown on it.

16. Guidance from RMA—in the form of Final Agency Determination: FAD-291 ("**FAD-291**") and Final Agency Determination: FAD-301 ("**FAD-301**")—instructs that an insured would be entitled to receive an indemnity for both a first insured crop and second insured annual forage crop so long as both crops satisfied the requirements of Section 6(k)(2).

17. RMA did not invent Section 6(k)(2) out of whole cloth; instead, Section 6(k)(2) of the RI/VI Policy parrots the language of 7 U.S.C. § 1508a(d)(4).

18. Section 1508a(d)(4) provides that:

> A producer may receive full indemnity payments on two or more crops planted for harvest in the same crop year and insured under this subchapter if each of the following conditions are met:
>
> (1) There is an established practice of planting two or more crops for harvest in the same crop year in the area, as determined by [FCIC].
>
> (2) An additional coverage policy or plan of insurance is offered with respect to the agricultural commodities planted on the same acreage for harvest in the same crop year in the area.
>
> (3) The producer has a history of planting two or more crops for harvest in the same crop year or the applicable acreage has historically had two or more crops planted for harvest in the same crop year.
>
> (4) The second or more crops are customarily planted after the first crop for harvest on the same acreage in the same year in the area.

19. On July 31, 2020, after Plaintiffs had received indemnity payments on their 2019 Cotton Crops and their 2019 Annual Forage Crops, RMA issued Informational Memorandum: COM-20-003 (the "**Informational Memorandum**"). Although the Informational Memorandum purported to provide guidance to AIPs regarding the interpretation and application of Section 6(k)(2), it actually represented a new interpretation (and, really, a re-writing) of Section 6(k)(2).

20. The Informational Memorandum largely restated RMA's previous guidance set forth in FAD-291 and FAD-301. For example, the Informational Memorandum quoted Section 6(k)(2) of the RI/VI policy provisions and stated:

> In order for the insured annual forage crop to meet the double cropping requirement, the remaining conditions must be met including but not limited to the following conditions: 1) it is a practice that is generally recognized by agricultural experts or

4

> organic agricultural experts for the area to plant two or more crops for harvest in the same crop year; and 2) the second crop is customarily planted after the first crop for harvest on the same acreage in the same crop year in the area. For example, regionally it is a generally recognized double cropping practice to plant wheat followed by soybeans.

Critically, however, the Informational Memorandum also contained the following statement: "RMA has not identified an instance of double cropping involving two spring seeded crops such as cotton followed by corn for silage."

21. AIPs did not agree with RMA's new "interpretation." In fact, one AIP, Hudson Insurance Company, initially asked RMA to rescind the Information Memorandum.

22. After RMA refused to rescind the Informational Memorandum, Hudson and other APIs were required to defer to RMA's new interpretation of Section 6(k)(2).

23. In September 2020, AgriSompo issued adverse determinations to Plaintiffs finding that their indemnity payments for the 2019 Cotton Crops should have been reduced to 35% under Section 15(e)(2) of the Basic Provisions of the Common Crop Insurance Policy. The basis for the adverse determinations was Plaintiff's purchase of coverage and receipt of indemnity payments for their 2019 Annual Forage Crops (the "**Adverse Determinations**").

24. Plaintiffs timely initiated arbitration against AgriSompo on December 1, 2020.

25. After discovery in the arbitration was nearly complete (and AgriSompo had apparently realized its stated basis for the Adverse Determinations was unfounded), AgriSompo obtained new counsel and immediately submitted a request for FCIC Interpretation regarding Section 6(k)(2) of the 2020 RI/VI Policy (the "**FCIC Interpretation Request**").

26. In the FCIC Interpretation Request, AgriSompo adopted RMA's interpretation of Section 6(k)(2) and argued that, for an insured to satisfy Section 6(k)(2), "it must be a customary practice in the area to plant those crops in succession, in the same order, on the same acreage, and

5

for harvest in the same crop year." "In addition, without any statutory or regulatory justification, AgriSompo argued that Section 6(k)(2) requires that the "second crop must customarily be planted at a point in time after the first crop *is harvested*."

27.     The interpretation of Section 6(k)(2) proposed by AgriSompo inserted an "actually harvested" requirement not found in the text of Section 6(k)(2) or 7 U.S.C. § 1508a(d)(4).

28.     Because it is not customary in West Texas for a farmer to plant and harvest an annual forage crop after planting **and actually harvesting** a spring cotton crop, AgriSompo's proposed interpretation of Section 6(k)(2) would necessarily result in Plaintiffs being ineligible to receive a full indemnity for both the 2019 Cotton Crops and 2019 Annual Forage Crops.

29.     RMA issued its official interpretation of Section 6(k)(2) on February 13, 2024 (the "**FCIC Interpretation**").

30.     The FCIC Interpretation purportedly adopted AgriSompo's proposed interpretation. But while RMA agreed with the outcome of AgriSompo's proposed interpretation, it reached that outcome using different reasoning.

31.     The FCIC Interpretation incorporated additional limitations onto Section 6(k)(2) that are not supported by the plain language of Section 6(k)(2). The central premise of the FCIC Interpretation is that:

> The requirement in 6(k)(2) is not contingent upon whether the producer harvests the crop in an actual double cropping scenario but rather whether it is customary in the area to plant the two crops, **both having the capability to reach maturity and be harvested**, on the same acreage in the same crop year.

The operative language of the Agency's interpretation—"both having the capability to reach maturity and be harvested . . . in the same crop year"—appears nowhere in Section 6(k)(2) or § 1508a(d)(4).

32. To support the FCIC Interpretation, RMA incorporated the definition of "double crop" contained in the RI/VI Policy into Section 6(k)(2) despite the fact the term "double crop" is not found in Section 6(k)(2).

33. Although Section 6(k)(2) parrots the language of 7 U.S.C. § 1508(d)(4), the FCIC Interpretation never explains why RMA's interpretation is necessary or justified.

34. The FCIC Interpretation never explains how the Agency has authority to impose additional double insurance limitations not contemplated or intended by Congress. Instead, RMA ignored Section 1508(d)(4) and imposed new double insurance limitations by bureaucratic fiat.

35. Plaintiffs challenged the FCIC Interpretation by filing an appeal with the USDA National Appeals Division ("**NAD**").

36. On July 22, 2024, the NAD administrative judge issued an Appeal Determination that upheld the FCIC Interpretation (the "**Appeal Determination**").

37. Plaintiff appealed the Appeal Determination to the Director of NAD.

38. On November 15, 2024, the Director of NAD issued a Director Review Determination that upheld the Appeal Determination (the "**Director Review Determination**").

39. Although the Director Review Determination is the "final agency action" at issue in this case, the core issue to be resolved is whether the FCIC Interpretation is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

40. Plaintiffs seek judicial review of the Director Review Determination and the FCIC Interpretation.

41. This Court is empowered to reverse or modify the Director Review Determination and the FCIC Interpretation if they are found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

42. Plaintiffs contend the Director Review Determination and FCIC Interpretation should be reversed as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law because:

    a. the FCIC Interpretation conflicts with the plain language of 7 U.S.C. § 1508a(d)(4) and Section 6(k)(2) of the RI/VI Policy;

    b. the FCIC Interpretation is an unreasonable construction of 7 U.S.C. § 1508a(d)(4) and Section 6(k)(2) of the RI/VI Policy;

    c. the FCIC Interpretation constitutes improper retroactive rulemaking; and

    d. the FCIC Interpretation is arbitrary, capricious, and an abuse of discretion.

**Request for Judicial Review, Declaratory and Injunctive Relief**

WHEREFORE, pursuant to the standards set forth in the RI/VI Policy, the FCIA, and the Administrative Procedures Act, 5 U.S.C. §§ 701-706, Plaintiffs respectfully request that the Court:

    A. review the Director Review Determination and FCIC Interpretation;

    B. determine and declare that the Director Review Determination and FCIC Interpretation are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law;

    C. enter judgment reversing the Director Review Determination and FCIC Interpretation;

    D. award Plaintiffs with their attorney's fees, costs and such further relief to the extent permitted by law and as the Court deems just and proper.

DATED this 13th day of November, 2025.

Respectfully submitted,

John Massouh, SBN 24026866
John.massouh@sprouselaw.com
SPROUSE SHRADER SMITH PLLC
701 S. Taylor, Suite 500
P.O. Box 15008
Amarillo, Texas  79105-5008
(806) 468-3300; (806) 373-3454 FAX


*/s/ John Massouh*
John Massouh

and

Jared Boyer,  SBN 30495  (*pro hac vice pending*)
jared@hblawpartners.com
HP LAW PARTNERS, PLLC
4217 28th Ave., NW Suite 101
Norman, OK 73069
(405) 561-2410; Fax (405) 563-9085

ATTORNEYS FOR PLAINTIFFS